**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E-FILED on ___2/14/07___**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CARDONET, INC.,

          Plaintiff,

    v.

IBM CORPORATION, et al.,

          Defendants.

No. C-06-06637 RMW

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS AND TO STRIKE

**[Re Docket No. 3, 10]**

      This action was originally filed in Santa Clara Superior Court and removed to this court on grounds of diversity.  Plaintiff Cardonet, Inc. ("Cardonet" or "plaintiff") pleads the following seven claims 1) breach of contract; 2) promissory estoppel; 3) fraud; 4) negligent misrepresentation; 5) violation of California Business and Professions Code section 17200; 6) unjust enrichment; and 7) conversion.  Defendant IBM Corporation ("IBM" or "defendant") moves to dismiss plaintiff's second through seventh claims on the grounds that the claims are barred by New York law, which IBM contends is the law that must be applied in this matter.  IBM further moves to strike plaintiff's request for punitive damages.  For the reasons set forth below, the court grants IBM's motion to dismiss and grants IBM's motion to strike.

United States District Court
For the Northern District of California

# I. BACKGROUND

Cardonet is in the business of developing, licensing, and providing maintenance and support for its product information management software. Compl. ¶ 6. IBM, allegedly after having used Cardonet's software by way of a licensing agreement with Interwoven, engaged in direct discussions with Cardonet to enter a licensing agreement. Compl. ¶ 7. As an interim accommodation to IBM's needs and hoping to induce IBM to enter a licensing agreement with Cardonet (which Cardonet anticipated being lucrative), Cardonet granted IBM unlimited use of its software for 90 days beginning on September 30, 2003. *Id.*

Cardonet and IBM entered into a written software licensing and maintenance agreement, dated December 23, 2003.[1] Cardonet prices its software based on usage and measures that usage in "SKUs." Compl. ¶ 8. Pursuant to that agreement, Cardonet contends that it granted IBM license to use its software for 1,385,724 SKUs at a significant discount from its usual pricing. Compl. ¶¶ 10, 12. According to Cardonet, IBM agreed to meet with Cardonet in October 2004 to discuss IBMs additional needs beyond the original number of SKUs provided and the amount of additional fees to be paid for usage in excess of that original number. Compl. ¶ 13.

By January 1, 2004, IBM's SKU usage totaled 1,403,149 and Cardonet blocked IBM's use. Compl. ¶ 14. IBM demanded that Cardonet unblock the software. Compl. ¶ 15. Allegedly agreeing upon the promise made by IBM to meet in October 2004 to discuss payment for IBM's additional usage, Cardonet complied with IBM's request to unblock IBM's use of the software. Eventually, IBM's SKU usage was 2.6 million SKUs over the original agreement. Compl. ¶ 18.

According to Cardonet, IBM has not paid for the use of the additional SKUs, nor has it paid the agreed upon maintenance fees. Compl. ¶ 19. Cardonet alleges that at approximately the same time that IBM was demanding use of Cardonet's software in excess of the original 1,385,724 SKUs, IBM was also in the process of acquiring a company called TRIGO Technologies, Inc. ("TRIGO"),

---

[1] In support of its motion, defendant requests judicial notice of two documents: 1) IBM Base Agreement #490S3033 ("Base Agreement") and 2) Addendum to License Agreement between IBM Corporation and Cardonet, Inc. Agreement No. 490S3033 ("Addendum"), both signed by the parties on December 23, 2003. It would appear that these agreements were intended to be attached to the complaint as Exhibit A. Compl. ¶ 11 ("A true and correct copy of the Agreement [executed in December 2003] is attached hereto as Exhibit A."). Further, the parties do not dispute the authenticity of the documents, thus the court grants defendant's request for judicial notice.

1  which was a competitor of Cardonet and marketed similar product information management

2  software.  Compl. ¶ 16.  Based upon the timing of the acquisition, Cardonet alleges that IBM knew

3  that the acquisition of TRIGO would allow IBM to use an alternative software solution and thus

4  avoid meeting with Cardonet or paying for its additional usage of Cardonet's software.  Compl. ¶ 17.

5  ## II.  ANALYSIS

6          Dismissal under Fed. R. Civ. P. 12(b)(6) is proper only when a complaint exhibits either a

7  "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

8  theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must

9  accept the facts alleged in the complaint as true.  *Id.*  "A complaint should not be dismissed 'unless it

10  appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

11  entitle him to relief.'"  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting

12  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

13          Fed. R. Civ. P. 12(f) provides that the court may upon motion by a party "order stricken from

14  any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

15  matter."

16  ### A.    Choice of Law

17          IBM argues that New York law applies to plaintiff's claims for relief based on a choice-of-

18  law provision in the Base Agreement.  Section 14.3 of the Base Agreement provides in relevant part:

19          This Agreement and the performance of transactions under this Agreement will be
        governed by the laws of the country where the Buyer entering into the relevant
20          agreement or PA is located, except: . . . in the United States . . . the laws of the State of
        New York applicable to contracts executed and performed entirely within that State
21          govern this Agreement.

22  Def.'s RJN, Ex. A at 6 § 14.3.  Cardonet does not dispute that this provision is part of the agreement

23  between the parties.  However, Cardonet argues that the provision does not apply to its tort claims

24  because those claims are based on wrongful conduct outside the written agreement.  It contends the

25  choice-of-law provision is a restrictive one and does not reach "actions of the parties outside of the

26  agreement or to laws concerning any claim *not* 'applicable to contracts executed in and performed

27  entirely within' New York."  Pl.'s Opp'n at 4:26-28; 6:3-18 (emphasis in original).  Plaintiff further

28  contends that under *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992) and *Discover Bank*

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE—No. C-06-06637 RMW
SPT                                                              3

United States District Court
For the Northern District of California

1    *v. Superior Court*, 36 Cal. 4th 148 (2005), the choice-of-law provision is unenforceable as to the its

2    third, fourth, fifth, and seventh claims.

3        The court first addresses the initial issue of whether the choice-of-law provision at issue is

4    broad enough to encompass the claims before the court. *Wash. Mut. Bank, FA v. Superior Court*, 24

5    Cal. 4th 906, 916 (2001) ("the trial court should first examine the choice-of-law clause and ascertain

6    whether the advocate of the clause has met its burden of establishing that the various claims of

7    putative class members fall within its scope").  Here, the parties dispute the import of the clause "the

8    laws of the State of New York applicable to contracts executed in and performed entirely within that

9    State." IBM argues that the language in the provision means that the choice-of-law provision

10    broadly covers all disputes even if the underlying transaction was performed in another state.

11    Cardonet argues that the clause merely modifies the preceding phrase, "the laws of the State of New

12    York"; thus, the provision only stands for the proposition that New York contract law applies to the

13    agreement, not any other New York law.  The scope of a choice-of-law provision is ordinarily

14    determined under the law designated in the contract between the parties. *Wash. Mut. Bank*, 24 Cal.

15    4th at 916 n.3; *Nedlloyd*, 3 Cal. 4th at 469 n.7.  We therefore consider the scope of the choice-of-law

16    provision under New York law.[2]

17        New York law favors enforcement of choice-of-law provisions.  *See Triple Z Postal Servs.,*

18    *Inc. v. United Parcel Serv., Inc.*, 2006 WL 3393259, *5 (N.Y. Sup. Ct. 2006) ("[i]t is the policy of

19    the courts of this State to enforce contractual provisions for choice of law and selection of a forum

20    for litigation") (citations and internal quotation marks omitted); *see also Reger v. Nat'l Ass'n of*

21    *Bedding Mfrs. Group Ins. Trust Fund*, 372 N.Y.S.2d 97, 114 (N.Y. Sup. Ct. 1975) ("The courts of

22    this state have recognized, as controlling, contractual provisions pertaining to which state law

23    governs, where the law chosen bears a reasonable relationship to the transaction.").  In *Triple Z*, the

24    court in construing a forum selection clause held that because public policy favors enforcement of

25    forum selection clauses, public policy also supports a broad reading of these clauses.  *Id.* at *7.

26    Although the *Triple Z* court was not construing a choice-of-law provision, it also noted that New

27

28    [2]      Plaintiff discussed the scope of the choice-of-law provision under only California law.  *See* Pl.'s Opp'n at 6:3-18.

United States District Court
For the Northern District of California

1  York policy similarly favors enforcement of choice-of-law provisions.  Applying this rationale here,

2  the court concludes that the restrictive reading of the clause proposed by Cardonet would not accord

3  with policies for interpreting choice-of-law provisions under New York law.  *Cf. Nedlloyd Lines*

4  *B.V. v. Superior Court*, 3 Cal. 4th 459, 464 (Cal. 1992) (noting that the enforceability of a choice-of-

5  law provision is "closely related" to the issue of enforceability of a forum selection provision and

6  affirming that public policy supports broad enforcement of both).  Therefore, the choice-of-law

7  provision reaches all of plaintiff's claims since the claims as pled seek the benefit of plaintiff's

8  bargain with IBM and seek damages of the type remedial in contract under New York laws.

9        **B.        Enforceability of Choice-of-Law Provision**

10            Because the basis for federal jurisdiction in this case is diversity, California conflict of laws

11  principles apply in addressing enforceability of the present provision.  *See S.A. Empresa De Viacao*

12  *Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981).  "In determining the

13  enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the

14  principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement

15  of such provisions."  *Nedlloyd*, 3 Cal. 4th at 464-65.  Restatement (Second) of Conflicts of Law §

16  187(2) provides in part:

17        The law of the state chosen by the parties to govern their contractual rights and duties
        will be applied, even if the particular issue is one which the parties could not have
18        resolved by an explicit provision in their agreement directed to that issue, unless either
        (a) the chosen state has no substantial relationship to the parties or the transaction and
19        there is no other reasonable basis for the parties' choice, or (b) application of the law of
        the chosen state would be contrary to a fundamental policy of a state which has a
20        materially greater interest than the chosen state in the determination of the particular
        issue and which, under the rule of § 188, would be the state of the applicable law in the
21        absence of an effective choice of law by the parties.

22  Here, it is not disputed that the first prong—whether the chosen state has a substantial relationship to

23  the parties or transaction—is met as IBM is incorporated and headquartered in New York.[3]  *See*

24  *Nedlloyd Lines*, 3 Cal. 4th at 467 (finding that a substantial relationship is clearly established where one

25  of the parties is incorporated and has a registered office in the chosen country).

26

27

28  _____
    [3]        It is also undisputed that California law would applicable under the rule of § 188 absent an
    effective choice of law provision.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE—No. C-06-06637 RMW
SPT                                                                              5

1    At issue is the second prong—whether application of New York law in the present case

2    would be contrary to a fundamental policy of the State of California.  Under the second prong, if

3    there is a fundamental conflict with California law, "the court must then determine whether

4    California has a materially greater interest than the chosen state in the determination of the particular

5    issue."  *Id.* at 466 (internal citation and quotation marks omitted).  If so, the choice of law provision

6    is not enforced.  *Id.*  Plaintiff argues that application of the second prong warrants application of

7    California law to its third, fourth, fifth, and seventh claims.

8    Plaintiff argues that fundamental California policies are implicated because of relevant

9    California statutes.  Specifically, its fifth claim is brought under Cal. Bus. & Prof. Code § 17200, its

10   third and fourth claims of fraud and misrepresentation implicate Cal. Civ. Code §§ 1572, 1709, and

11   1710, and its seventh claim for conversion implicate's California's "long history of forbidding

12   conversion of property."  However, merely because plaintiff's claims might implicate California

13   statutes is not sufficient to establish that application of New York law to the claims would be

14   contrary to any of the policies embodied in the statutes.

15   In *Ribbens Intern'l, S.A. de C.V. v. Transport Intern'l Pool, Inc.*, 47 F. Supp. 2d 1117, 1122

16   (C.D. Cal. 1999), the court considered the text and state case law applying the statute at issue in

17   determining whether a California statute embodied a fundamental California policy and concluded

18   that it did:

19   [T]he very text of the statute suggests this conclusion: "Attorney's fees provided for by
     this section shall not be subject to waiver by the parties to any contract which is entered
20   into after the effective date of this section. Any provision in any such contract which
     provides for a waiver of attorney's fees is void." Cal. Civ. Code § 1717(a). This language
21   is mandatory, unavoidable and emphatic. Section 1717(a) is no default provision or
     gapfiller, subject to override by the parties. Rather, it represents a basic and fundamental
22   policy choice by the state of California that nonreciprocal attorney's fees contractual
     provisions create reciprocal rights to such fees.
23
24   The court then also noted that although the choice-of-law provision dictated that Pennsylvania law

25   did not provide the same mutuality requirement to one-way attorney fee provisions and therefore

26   application of Pennsylvania law would conflict with the policy in Cal. Civ. Code § 1717.

27   In contrast, here, plaintiff does not argue that application of New York law would *conflict*

28   with any fundamental California policies in the statutes at issue.  Indeed, plaintiff argues that New

York law recognizes fraud claims, negligent misrepresentation, and conversion (as well as

United States District Court
For the Northern District of California

1   promissory estoppel).  Pl.'s Opp'n at 9:12-18.  In *General Signal Corp. v. MCI Telecommunications*

2   *Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995), the Ninth Circuit concluded that application of New

3   York law to fraud claims did not violate California public policy, even if New York law required

4   fraud to be established by clear and convincing evidence while California only required a showing

5   by a preponderance of the evidence.  Therefore, the court concludes that the choice-of-law provision

6   is applicable to plaintiff's fraud claim.

7        In addition, defendant's argument that to the extent application of New York law to fraud

8   claims does not conflict with fundamental California policy, neither would the application of New

9   York law to the less culpable negligent conduct applicable to plaintiff's negligent misrepresentation

10  claim.  The court finds defendant's argument persuasive.  As noted above, plaintiff agrees that New

11  York recognizes a claim for negligent misrepresentation.  Moreover, plaintiff cites no case which

12  suggests that application of New York law to a negligent misrepresentation claim would conflict

13  with fundamental California policy.  Finally, although defendant does not make this same argument

14  as to plaintiff's conversion claim, the court likewise concludes that application of New York law to

15  plaintiff's conversion claim would not conflict with fundamental California policy.  Notably,

16  plaintiff only relies upon California's "long history of forbidding conversion of property" in arguing

17  a fundamental California policy is implicated.

18       Next, defendant argues that application of New York law to plaintiff's fifth claim under

19  § 17200 would not conflict with fundamental California policy because New York also has its own

20  unfair business practices statute which prohibits deceptive and unfair business practices.  *See* N.Y.

21  Gen. Bus. Law § 349.  Plaintiff argues there is a policy conflict because the court in *Korea Supply*

22  *Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003), stated, "the overarching legislative

23  concern" of § 17200 was "to provide a streamlined procedure for the prevention of ongoing or

24  threatened acts of unfair competition."  Plaintiff's argument is unpersuasive.  Whether a § 17200

25  claim implicates fundamental California policy depends on the predicate violation.  *Compare Nibeel*

26  *v. McDonald's Corp.*, 1998 WL 547286 at *11 (N.D. Ill. 1998) (concluding that § 17200 claim did

27  not implicate fundamental California policy so as to bar enforcement of choice-of-law provision

28  after finding that enforcement of provision as to underlying fraud claim would not implicate

1    fundamental California policy) *with Application Group, Inc. v. Hunter Group Inc.*, 61 Cal. App. 4th

2    881, 907-08 (1998) (concluding that there was a conflict of California policy as to § 17200 claim

3    after determining that there was a conflict as to underlying statutory claim).

4          Moreover, the fact that New York law differs from California law does not necessarily

5    signify that application of New York law would contravene California public policy.  *See*

6    *Sarlot-Kantarjian v. First Pennsylvania Mortgage Trust*, 599 F.2d 915, 918 (9th Cir. 1979).

7    Similarly, "the mere fact that the chosen law provides greater or lesser protection than California

8    law, or that in a particular application the chosen law would not provide protection while California

9    law would, are not reasons for not applying California law. "  *Medimatch, Inc. v. Lucent Techs., Inc.*,

10   120 F. Supp. 2d 842, 862 (N.D. Cal. 2000).  The court therefore concludes that the choice-of-law

11   provision is enforceable as to all of plaintiff's claims.[4]

12       **C.    Economic Loss Rule**

13         IBM argues that plaintiff's second through seventh claims are barred by New York's

14   economic loss rule.  New York's economic loss doctrine restricts plaintiffs "who have suffered

15   'economic loss,' but not personal or property injury, to an action for the benefit of their bargain.  If

16   the damages are the type remedial in contract, a plaintiff may not recover in tort." *Carmania Corp.,*

17   *N.V. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 938 (S.D.N.Y. 1989).  Where claims allege only

18   economic loss, the means of redress is an action for breach of contract.  A tort action for economic

19   loss is inappropriate.  *See Long Island Lighting Co. v. Transamerica Delaval*, 646 F. Supp. 1442,

20   1457 (S.D.N.Y. 1986).  Thus, even where a plaintiff has alleged a breach of duty by the defendant

21   separate and distinct from the duty to perform a contract, a tort claim will nevertheless fail if the

22   damages sought are recoverable in contract.  *Id.*  Under certain circumstances, however, a

23   contractual party may be liable in tort if its defective performance of contractual services results in

24   injury to the person or property of the other contracting party.  *See Netzer v. Continuity Graphic*

25   *Assocs., Inc.*, 963 F. Supp. 1308, 1320 (S.D.N.Y. 1997).

26

27

28   [4]      Plaintiff did not oppose defendant's argument that the choice-of-law provision is enforceable
     as to plaintiff's sixth claim for unjust enrichment.

**United States District Court**
For the Northern District of California

1    Plaintiff contends that it seeks to recover damages that are not otherwise recoverable in

2    contract.  It claims that it has suffered property loss, specifically that IBM's actions have resulted in

3    lost business reputation, violation of its intellectual property rights, and the "illegal taking of

4    Cardonet's property in the conversion cause of action," which constitute damage to Cardonet's

5    property.  Pl.'s Opp'n at 8.  The court is unconvinced.  First, plaintiff does not meaningfully allege

6    that its business reputation was damaged, stating that it suffered such damage in the most conclusory

7    of fashions.  Compl. ¶¶ 37, 41 ("As a result of Defendant IBM's wrongful conduct, Plaintiff

8    CARDONET has suffered and will continue to suffer economic losses, and other general and

9    specific damages, including but not limited to damages to business reputation, lost profits....").

10   Second, the damage incurred from the alleged violation of intellectual property rights and the

11   conversion of the software are varieties of damage that are addressed by a breach of contract claim

12   on a software licensing contract.  The parties would have contracted for the rights, however limited,

13   to use Cardonet's software and conditions for the cessation of its use upon breach of the contract or

14   termination of the contract.

15   Plaintiff also argues that its claims are not based solely upon defendant's breach of contract.

16   Plaintiff contends that its second through seventh claims are based upon IBM's representation that it

17   would pay for the additional SKUs that it allegedly procured above and beyond the terms of the

18   contract between the parties.  Plaintiff submits that it can amend its complaint to clarify this

19   distinction.  The court agrees that the facts alleged may lend themselves to stating tort claims that

20   may not be barred by the economic loss doctrine.  Should Cardonet successfully establish a

21   transaction that occurred outside of the contract, there may be grounds for tort recovery separate

22   from those recoverable under the contract.[5]  Thus, the court will dismiss plaintiff's second, third,

23   _____

24   [5]    While defendant asserts that "[t]he economic loss rule has been applied to bar tort claims

25   based on [fraud and deceit and negligent misrepresentation allegations]," the court notes that this the
     law is not so settled as defendant would like the court to believe.  The general rule under New York

26   law is that economic loss is not recoverable under a theory of negligence or strict liability," *Am. Tel.
     & Tel., Co. v. New York Human Res. Admin.*, 833 F. Supp. 962, 982 (S.D.N.Y. 1993).  And, as

27   defendant asserts, the economic loss rule has also been cited as a basis for dismissing fraud claims,
     but the application of this rule under New York law is by no means consistent.  *Compare, e.g.,*

28   *Shred-It USA, Inc. v. Mobile Data Shred*, 222 F. Supp. 2d 376, 379 (S.D.N.Y. 2002) (dismissing
     fraud claim based on the economic loss doctrine but citing only to authority applying the doctrine to
     strict liability and negligence) *with In re Ford Motor Corp. Vehicle Paint Litig.*, 1997 WL 539665,

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE—No. C-06-06637 RMW
SPT                                                                                          9

1  fourth, sixth, and seventh claims with leave to amend to clarify its position that the tort claims do not

2  arise from IBM's alleged breach of contract.[6]

3          **D.      Failure to Plead Fraud Claims with Particularity**

4          Defendant seeks dismissal of plaintiff's third claim (fraud and deceit) and fourth claim

5  (misrepresentation) for failure to plead with particularity under Federal Rule of Procedure 9(b).  The

6  rule states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake

7  shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The allegations must be "specific enough to

8  give defendants notice of the particular misconduct which is alleged to constitute the fraud charged

9  so that they can defend against the charge and not just deny that they have done anything wrong."

10  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

11         Plaintiff has agreed to reallege these claims with particularity, thus, plaintiff's third and

12  fourth claims are dismissed with leave to amend.

13         **E.      Punitive Damages**

14         Defendant's motion to strike plaintiff's demand for punitive damages is granted since the tort

15  claims are being dismissed.  However, because the court has given plaintiff leave to amend the

16  dismissed tort claims, punitive damages may yet be recoverable.

17

18

19

20

21

22

23

24

25

26  at *6-*7 (E.D. La. Aug. 27, 1997) (stating that "this Court has found no New York authority
    applying the economic loss doctrine to an action for fraud" and observing that "New York courts
27  commonly permit fraud claims seeking recovery for economic injuries to proceed").

28  [6]      Because the court concludes that New York law applies, plaintiff's fifth claim under Cal.
    Bus. & Prof. Code § 17200 is dismissed with prejudice.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE—No. C-06-06637 RMW
SPT                                              10

**III.  ORDER**

For the foregoing reasons, the court grants defendant's motion to dismiss and to strike as follows:

      1.    Plaintiff's second, third, fourth, sixth, and seventh claims are dismissed with twenty days' leave to amend to replead under New York law, and to replead with particularity under Rule 9 where necessary.

      2.    Plaintiff's fifth claim under California Business and Professions Code section 17200 is dismissed with prejudice.

      3.    Defendant's motion to strike plaintiff's request for punitive damages is granted with twenty days' leave to amend.

DATED:      2/14/07

*Ronald M Whyte*

RONALD M. WHYTE
United States District Judge

United States District Court
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Kenneth N. Frucht                Kfrucht@aol.com
Frederick J. Geonetta           landglawyers@msn.com
Thomas Marc Litton              tmlitton@compuserve.com

**Counsel for Defendants:**

Shon Morgan                      shonmorgan@quinnemanuel.com, amykuzio@quinnemanuel.com
Joseph Mel Paunovich            joepaunovich@quinnemanuel.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**         2/14/07                                              SPT
                                                          **Chambers of Judge Whyte**

United States District Court
For the Northern District of California